Sneed, J.,
delivered the opinion of the court.
The question in this case arises upon a. demurrer by the plaintiff to the defendant’s plea of a discharge in bankruptcy, and the main point raised by the demurrer is, whether the debt sought to be recovered of the defendant after his discharge was a “provable debt” against his estate in the proceeding in bankruptcy.
The facts are, that Messrs. Leftwich & Cosh brbught an action of replevin against the plaintiff, Quinichett, on the 10th of January, 1868, for certain mules, several of which were seized under the writ by the sheriff and delivered to Leftwich & Cosh. The defendant, Choate, was the surety of Leftwich & Cosh on the replevin bond executed on suing out the writ. Quinichett made defense to the action of re-plevin, pending which Choate, on the 30th of December, 1868, filed his petition in bankruptcy, and was adjudged a bankrupt, and received his discharge on the 30th of September, 1869. The action of replevin resulted in a judgment in favor of Quinichett against Leftwich & Cosh, rendered on the 27th of October, 1870, for a return of the property, without any judgment for its value, or for damages for the detention. A rule was then made upon Cosh, into whose possession the property had gone, to return the same, or stand committed for contempt if he failed to show good cause for its non-return. Cosh responded to the rule on the 14th of January, 1871, but his answer *429 was adjudged insufficient, and a judgment was rendered against him directing him to pay into court the sum of $350, the amount he had sold the mules for, as admitted by him, or stand committed. At the same time a jury was impaneled to assess the value of the mules and the damages for their detention, and there was again a judgment for the return of the property, or, on failure, a judgment against Cosh for the value less the said sum of $350 which had been paid. into court. From so much of this judgment as ordered Cosh to pay said sum of $350 or stand committed, he appealed; and upon executing a bond, the court allowed him to withdraw the $350 paid into court, the other part of the judgment remaining in full force. The defendant in replevin, Quinichett, then moved for judgment against Choate as surety on the replevin bond, to which motion the defendant, Choate, pleaded his discharge in bankruptcy. Quinichett demurred to the plea, and at the January term, 1872, a judgment was rendered sustaining the demurrer, and holding Choate' liable to Quinichett for the damages assessed, and directing him to return the property, or, upon failure, to pay to Quinichett $600, the value assessed by the jury. From this judgment Choate has appealed.
We believe the only question seriously controverted in argument, as already stated, and certainly the only one we can consider, is whether Choate’s liability upon the bond was a demand provable under the laws of bankruptcy. This depends upon the proper construction of„ the 19th section of the Bankrupt Act of *430 March 2, 1867, which contains the following provision :
“All demands against the bankrupt for, or on account of, any goods or chattels wrongfully taken, converted, or withheld by him, may be proved and allowed as debts, to the amount of the value of the property so taken or withheld, with interest. If the bankrupt shall be bound as drawer, endorser, surety, bail, or guarantor, upon any bill, bond, note, or any other specialty or contract, or for any debt of another person,' and his liability shall not have become absolute until after the adjudication in bankruptcy, the creditor may prove the same after such liability shall have become fixed, and before the final dividend shall be declared.”
Then follows this clause:
“In all cases of contingent debts and contingent liabilities contracted by the bankrupt and not herein otherwise provided for, the creditor may make claim therefor, and have his claim allowed, with the right to share in the dividends ic the contingency shall happen before the order for the final dividend; or he may at any time apply to the court to have the present value of the debt or liability ascertained and liquidated, - which shall then be done in such manner as the court shall order, and he shall be allowed to prove for the amount so ascertained.” * * *
And again: “ If any ■ bankrupt shall be liable for unliquidated damages arising out of any contract or promise, or on account of any goods or chattels wrongfully taken, converted, or withheld, the court *431 may cause such damages to be assessed in such mode as it may deem best, and the sum so assessed may be proved against the estate.'”
It must be conceded that the phraseology of this section seems comprehensive enough to embrace almost every character of liability upon which the bankrupt could possibly have bound himself; yet it has been the subject of much conflict of opinion, and of an elaborate and ingenious controversy in this case; the argument on the one side maintaining a construction directly opposed to that on the other.
But in the application of these provisions of the bankrupt law to the case in judgment, we must first understand what are the precise obligations assumed by the surety in a replevin bond under our law. The obligation imposed is that the plaintiff will abide by and perform the judgment of the court in the premises. And the obligation of the surety is identical with that of the principal. It is made payable to the defendant, in double, the value of the property taken by virtue of the writ. Code, sec. 3377. If the issue is found for the defendant, or the plaintiff dismisses or fails to prosecute his suit, the judgment shall be that the goods be returned to the defendant, or, on failure, that the defendant recover their value with interest thereon, and damages for the detention Code, see. 3390. And the jury may, in proper cases, give exemplary damages in favor of either party; and in all cases where the plaintiff fails to prosecute his suit with effect, they may make such valuation as may be likely to effect a return of the property *432 to the defendant, if the character of the property is such as to make the return of the specific property important. Code, sec. 3391.
Now it is manifest that such a bond does not create a debt in its technical sense, which is a sum of money due by certain and express agreement. The distinguishing feature of a debt, says Blackstone, is, that a fixed and specific amount is owing, and no future valuation is required to settle it. 3 Bl. Comm., 154; 2 Hill, N. Y., 220.
A liability is not always a debt. A liability is defined to be a responsibility: the state of one who is bound in law and justice to do something which may be enforced by action. This liability may arise from contracts either express or implied, or in consequence of torts committed. 2 Bouv. Ij. D., 39.
The bond of the surety in this case imposed upon him all of the plaintiff’s liability, and that liability was contingent upon the result of the action, and in this case that contingency upon which the liability rested — the unfavorable result of the litigation — has happened since the defendant’s discharge, but existed in full effect before and pending the pi’oceeding in bankruptcy. The surety then was bound to the defendant in replevin, not in a contingent debt, but in a contingent liability; and, by the exjwess terms of the statute, the defendant might have had his claim allowed, with the right to share in the dividends if the contingency should happen before the order for the final dividend; or he might at any time have applied to the court to have the present value of the *433 debt or liability ascertained and liquidated, which should then have been done in such manner as the court should have ordered, and he should have been allowed to prove for the amount so ascertained. So that at any time before the final dividend, the contingent liability up to that time might have been ascertained under the orders of the court, and that amount set apart to abide the happening of the contingency upon which the liability was dependent. Or if, in the words of the act, the bankrupt shall be liable for unliquidated damages arising out of any contract or promise, or on account of any goods or chattels wrongfully taken, converted, or withheld, the court may cause such damages to be assessed in such mode as it may deem best, and the sum so assessed may be proved against the estate.
We are not advised by the record as to the date of the final settlement of the estate in this case by the assignee; but we may presume, from the interval of time elapsing between the date of the discharge and the date of the judgment in replevin, that at the time of this motion the final dividend had not been declared, and it is so stated at the bar and not denied. However this may be, it is certain that this contingent liability continued through the progress of the proceedings in bankruptcy; and under the plain provisions of the statute the action of the court might have been invoked to ascertain the contingent damages, which, when so ascertained upon the eveut contemplated by the bond, might have been proved as a debt against the estate.
*434 An interpretation has been pat upon the clause touching contingent liabilities which we think is just and legitimate. “It covers/5 says a writer upon the subject, “not only debts, but liabilities.55 And as to the clause touching contingent liabilities, he says: “The true construction undoubtedly is, that if a liability has been incurred, the extent of which may depend upon the happening of a contingency, but which may reasonably be anticipated, the contingency being reasonably certain to happen before the final dividend, the court may determine in some proper method the value to be placed by the claimant on such liability, and admit him to prove it. Avery & Hobbs, 143.
In the case of Jamison v. Blowers, 5 Barb., 680, it was held that, under the clause of the Bankrupt Act of 1841 permitting uncertain and contingent demands to be proven against the bankrupt, a covenant for quiet enjoyment in a deed, although not broken until after the grantor had been declared a bankrupt, was provable. 1 Sand. Ch. R., 187; 11 Geo., 142; 19 Ill., 134. But this case was not followed in French v. Morse, 2 Gray, 111, the court holding that the clause in the act of 1841 should be held to mean, not “demands55 whose existence depends on a contingency, but existing demands upon which the cause of action depends upon a contingency.
Now it will be observed that the words of the act of 1841 are “contingent demands,55 and those of the act under consideration are “contingent liabilities.55 The word “demand,55 it is said, is a word greater in *435 the extent of its signification than any other word except “claim.” Coke Litt., 291. This in^ one sense is undoubtedly true, but the word “liability,” as used in this statute, imports something more than demand, and something different from a demand in its technical sense. And yet the surety to a replevin bond, becoming at once a party to the record by his act of suretyship, not only admits a liability, but may be said in one sense to create an existing demand against himself for the value of the property taken, and damages; though the cause of action may depend upon the contingency contemplated in the bond.
If the plaintiffs in this action of replevin, who had taken and converted or destroyed the defendant’s property, were the defendants to this motion instead of the surety on their bond, and were in precisely the same attitude, it would seem a harsh ruling, and one strangely at war with the liberal provisions of this statute, to have denied to the defendants this their only remedy. And surely the surety of the plaintiffs can occupy no worse condition.
The counsel for the plaintiff has cited several cases which would seem to oppose this construction of the statute; but they are decisions, for the most part, tinder the act of 1841 and the English act of bankruptcy, neither of which contain the same liberal margin as to what claims are provable, as that of 1867.
¥e are not disposed to follow them, but are content to construe this act according to the reasonable and natural import of its words. We hold, therefore, that the demurrer was improperly sustained.
*436 The other question made does not properly arise under the demurrer, but the plaintiff may have the benefit of it by replication to the plea.
Reverse the judgment and remand the case for-further proceedings.